May it please the court, counsel, I'm Paige Straughn and I represent Thomas Belanger. He is here on appeal from his initial commitment as a sexually dangerous person. In order to be found a sexually dangerous person, it must be proven that the respondent suffers from a mental disorder, that he has criminal propensities to commit sexual offenses, and that those criminal propensities suggest that he will commit further acts of sexual assault or child molestation. In this case, Mr. Belanger was evaluated by two state doctors, one Dr. Cuneo and the second was Dr. Stanislas. They both agreed in their diagnosis that Mr. Belanger suffers from sexual sadism disorder. That's a fairly rare diagnosis and there's not a lot of research done about it. But the more interesting part about the doctors' opinions is that they each separately reached the conclusion that he suffers from sexual sadism based on different information. And they disagree with each other about whether certain factors exist. The important part of this case is the mental disorder at heart. It is important to understand what that means in the context of an SDP case. A mental disorder in a sexually dangerous person case is a condition that affects the respondent's ability or capacity to control his sexual behavior. In the context of these cases, it's about control. In this case, Dr. Cuneo relied on an event from 1989, which no one will take issue with, was definitely sexually motivated. And again, a later event in 2015. There was a separate event in, I believe, 2002, and this is where things go a little off to the unexpected. Mr. Belanger was convicted of an offense involving a drug deal gone bad. There was a physical attack on someone who believed owed him money, and it involved the insertion of a broomstick in that man's anus. It was charged as a sexual offense. But Dr. Cuneo said the only sexual component he could see to that was evidenced in Mr. Belanger's admission that he laughed when it happened. Certainly not acceptable behavior, not nice. But not nice is not the question when it comes to a diagnosis. Dr. Stanislaus said she saw absolutely no sexual component at all to that broomstick incident. Not at all. So that brings us to considering the 1989 issue with the young child that we did not dispute was sexual in nature, and the 2015 incident, which is what brought this case to the court's attention. In 2015, Mr. Belanger was charged with a sexual assault against his wife. Instead of proceeding on those charges, they filed a sexually dangerous petition. And I'm sure your honors are aware of why that happens. Being committed as a sexually dangerous person carries with it the likelihood of a much, much, much longer sentence than a conviction for any individual sex offense. And that's why those things happen. But let's look at the timing difference. We're looking at an event from 1989 to 2015. That's a lot of years. All the state has to show is that Mr. Belanger suffered from sexual sadism for more than one year. 1989 to 2015, clearly more than one year. Here's where the problem lies. There is no doubt at all that between 2003 and 2013, there was absolutely no incidence of sexual sadism. It wasn't he in prison during that time? He was. However, the DSM does not distinguish and does not say that a person must be free and able to carry out in the free world an act of sexual sadism in order for that to count. It doesn't make that distinction. Also, very important is... But if you're lawfully restrained from doing that, don't you think that has to be taken into consideration? I do, but we're always lawfully restrained from doing sexual assaults. Always here in prison. I mean, if you're in prison, it's a lot tougher to be a sexual sadist, hopefully. I think the reality is that it's probably not. Actually, the rate of sexual assaults in prison is outrageous. Outrageous. I know, but that's not in the record, fortunately. That's just common knowledge. But the important point about the... Isn't it also true that Dr. Cuneo suggested that there's no telling if he fantasized and probably that he did during the 10 years locked up? That's exactly where I was going with this, yes. Fantasy, sexual fantasies can be supportive of a diagnosis. When Dr. Cuneo was asked about it, he said that Mr. Blander denied them, but it was possible that he had them. Well, possible is not quite the same. Should possible carry the day? Should that meet the burden? Certainly not. Anything is possible. We don't just presume and attribute actions or thoughts to someone and then convict him or commit him based on what might have been. That's not what the standard's about. We know that he went at least a decade with no conduct, and we have no evidence of any sexual fantasies. Dr. Stanislaus was also asked about those sexual fantasies, and she agreed that there was no evidence of any such thing. So even though they disagree about how they reached a diagnosis of sexual sadism, the important part of each of their testimonies is that they each find an element missing. He clearly controlled himself. The element being the 10-year period. At least that 10-year period, and perhaps another 10-year period between the 1989 and the 2002 broomstick incident, which may or may not have been sexual in nature. No evidence that there was anything more there. So we have long periods of time with a complete lack of evidence that he did anything that was sexually sadistic. Wasn't he married five times? He was. And during that 10-year period, how many different wives were involved in that 10-year period? You know, I can't answer that off the top of my head. I don't recall. During that 10-year period while he was in prison? No, while he was in prison. Oh, in a 10-year period. I know that most of his marriages were short-term, but honestly, I can't remember off the top of my head. I'd be happy to look into it and see if there's something wrong with that. Was there testimony that each of his marriages contained elements of sexual sadism? There was evidence presented that all of his marriages involved violence of some nature. There was also testimony by Dr. Stanislav that all rough sex is not necessarily sadistic sex. So without testimony from each and every one of those wives about the nature of their involvement, their impression or perception of it, I think that's going too far as to presume that just because there may have been some violence in their relationship and perhaps even rough sex that that was necessarily sufficient to support that finding of sexual sadism. I think that's asking too much presumption for something that evidence could have been presented on but wasn't. And Dr. Stanislav was asked that and did admit directly that certainly there can be rough elements and violence without it being a sexually sadistic act. And is that in your statement of facts? There is definitely reference to it in regards to all rapes not being sadistic. I would have to go back. Dr. Stanislav did say that, yes. I failed to see any citations to the record in your statement of facts. In my statement of facts? Correct me if I'm wrong. There are several statements that are not supported with us. RC440 is a reference to all rapes not being sexually sadistic. And one who rapes is not necessarily a sexual sadist. That is included in the paragraph based on her, about her testimony. Okay. But there is certainly, if I have overlooked a record citation, I would be more than happy to fill those in for you as well. I try to be pretty precise on those. Under your argument, if the state wants to make someone a sexually dangerous person and they're committed for 10 years, how does one ever get out? They prove that they are no longer sexually dangerous. And how does a guy like your client prove that? It's tough, virtually impossible. A sexually dangerous person is committed to the treatment center at the medical correctional center where they are allowed anywhere from one to three hours a week of treatment in a group setting. That is the preferred methodology for dealing with sex offender treatment. And this is kind of getting outside of the scope of the argument, but they are evaluated here. But we have a 10-year period, and your argument is that he's not been an offender for 10 years. So that's my question. How does somebody, if they've been free of sexual sadism for 10 years, theoretically, and the state comes in with two psychologists who says conflicting, as you're saying, my question is, it seems that your client is at a severe disadvantage because he'll never be able to be proven. That is certainly true. I can tell you that the 10-year sentence that I think we're all talking about when he was incarcerated, that was an actual prison sentence for a conviction. It was not part of an SDP commitment. Go ahead. This SDP commitment comes well after that time period when something new happens. In 2015. Right. He had long since started multiple sentences, and that's how we got here. Okay. I would ask that you would look closely at the doctor's opinions and not just rely on their ultimate conclusion. And when you do that, I think you'll find that he is not a sexual sadist and should not have been found beyond a reasonable doubt to be sexually dangerous. Thank you. Thank you. You'll have time to move on. Your Honors, Counsel, may it please the Court, Kelly Stacy, appearing for the State of Illinois. The issue in this case is whether the state proved beyond a reasonable doubt that the respondent is a sexually dangerous person. Both of the examining doctors, Dr. Stanislaus and Dr. Cuneo, diagnosed the respondent with sexual sadism disorder. And according to the record, studies show individuals who are really ill who also abuse substances are five times more dangerous than those with just mental illness. The record indicates that the respondent has a very lengthy history of alcohol, marijuana, and cocaine abuse, and he has numerous prior mental health admissions and extreme sexual acting out behaviors. The problem in this case is that in all of the times the respondent has been in prison, none of that has ever been for treatment-based care. And that is what we're looking at here is a commitment based on him getting the treatment that he apparently desperately needs. The violence that the respondent has committed is intermingled with sexual gratification. He sexually assaulted and violently assaulted his wife. He committed aggravated criminal sexual assault of a 14-month-old baby. When did that happen? I believe I'm a little bit rusty on the dates. I believe one was in 89, one was 2002, and I believe the other was 2015. I don't have right in front of me the exact answer. In 2002, aggravated battery was not mentioned. Aggravated battery? Yeah, it was aggravated battery. But you're right, it's 89 in 2015, 2015 on the wife. Okay. There's a guilty plea. 1990 was the conviction of aggravated criminal sexual assault to a child under 13. 1990? May 9, 1990. Okay. So that would be the 14-month-old baby, his stepdaughter, while his wife was at the hospital having a baby. The child had numerous fractures and there was anal penetration of the child, and the defendant did admit that he anal penetrated the baby. This happened while his wife was having a baby? Yes, at the hospital having a baby. What county was that in? I won't say Erfurt, but I could be wrong. Miss Strong's a lot more wrong. I think it was Ford County. Was it Ford? That was the aggravated criminal sexual under 13. My notes say Ford County. We've got Ford, we've got Iroquois, we've got White County. Iroquois was 2013, criminal sexual assault on March 4, 2013. If we go to the incident on the broomstick, I'd like to point out that. Which broomstick are we talking about now? Which broomstick? This is with the man who allegedly sticked him on a drug deal. Yeah, okay. Four people held this man down while a respondent assaulted the man with the broomstick and assaulted him. What the respondent pled guilty to was criminal sexual assault. So to now come back and say, well, was that really a sexual incident? It's a sexual incident because that's what you pled guilty to. There had to be a factual basis. And amnesty is a sex order. It's definitely a violent act. I believe that in this case, this respondent is an extremely dangerous person. His victims are men, women, infants. He needs help. He needs to remain committed. And Justice Cates had asked about what do you do to try to get out. I think what the rules allow for is that once he engages in treatment, he's able to petition the court when he feels like he's made a sufficient improvement that he's no longer going to be a danger. Can you also testify that he attempted suicide over 100 times? I believe that is correct. So that's really my question is usually there's testimony in these cases about his progress in treatment. But there wasn't that in this case. It was an attack on two psychologists, one of whom, Dr. Cuneo, has been evaluating sex offenders for 30 years. I know 30, over 30 years. It's been quite some time. It's over 30 years, I know. Because I started out as a young lawyer when he was starting out as a young guy at Chester. So, I mean, I see this as an attack on the state's proof as opposed to someone coming in saying this is what I've accomplished. Am I correct on that? You may be correct on that. I think what the state had to prove was, and Ms. Strong indicated this to the court, a person who suffers from a mental disorder, here we have sexual sadism disorder, and there might be disagreements on how they arrived there, but both of them arrived at the same place. It might be a relatively rare disorder, but we have that here. That's a DSM described disorder. It is. And so arrival at a DSM disorder by different means is not uncommon. And one is a DSM-IV and one is a DSM-V, but even that in and of itself doesn't change the outcome. And we also have criminal propensities to the commission of sex offenses. We've got assaults and molestation of children. This is one of the worst cases I believe I've ever read about, and the state believes it has met its permanent proof beyond a reasonable doubt that the respondent is a sexually dangerous person, and we would respectfully ask you to affirm. Thank you, Your Honor. Thank you. Ms. Strong. Just very quickly, Your Honor. I just wanted to clarify that I think the reason we didn't see much evidence about what Mr. Blanger had accomplished in treatment was that this was the initial commitment. He hadn't been a part of the SDP program so that he could fully partake in that. Essentially all you can do when you are committed and awaiting a commitment order, you can have some assessments done. You don't really have access to that sort of treatment, so that evidence about that can be presented down the road should he remain committed. He'll have the opportunity to petition and show what he has done to overcome those things. But I think that's the difference here. As you stated, he's been in prison for 10 years. During that time, I thought I read in one of your briefs that he did not seek out any of the different treatment courses or anything of that nature while he was in for those 10 years. And, in fact, didn't one of the doctors point out that he felt that he had not needed any treatment? I think that is quite likely accurate. I believe that he did not participate in any treatment during any of his initial or original actual prison sentences. I think Ms. Kelly pointed out something really important. This man is extremely mentally ill, very mentally ill. Hundreds of attempts at suicide, hospitalizations starting, I believe, as early as 1973. He's a very mentally ill man. But being mentally ill alone with another diagnosis may not be sufficient to support a finding of sexually dangerous. Only certain diagnoses, such as sexual sadism disorder, are going to suffice in order to carry the debt. And going beyond that to talk about the damage he has done and how many crimes he has committed, none of that matters if we don't meet the initial threshold of finding that he is suffering from a mental illness that falls under the SDP Act. You point out in your argument section that both doctors also admitted that the respondent did not meet one of the qualifications for sexual sadism. That was not, there was no page references in regard to that quote where the evidence appears on the record. And from my review of the record, it's not in the record. Where do you get that both doctors admitted that the respondent did not meet one of the qualifications for sexual sadism? Dr. Cuneo acknowledged that he had in fact controlled his behavior and evidently his thoughts and fantasies during the time that he was incarcerated, between at least 2003 and 2003. No, he did not admit that he controlled his thoughts and fantasies. He meant there was no evidence that he had had any. There was no evidence, which is different than he controlled them. He acknowledged that there had been no acting out. Dr. Cuneo did acknowledge that and that he had seen no evidence of any fantasies. So that's what I'm referring to. And that may, that record site may be in the statement of facts. And again, if it's not, I would certainly provide it for you. I try to be so precise about that so I'm surprised to see I'm missing something. What about Dr. Stanislaus? Dr. Stanislaus, she had different opinions about it. She presumed that he was having fantasies. And again, chopped it up to he's in prison, what can he do? But then there was further discussion and questioning about there are prison rapes, aren't there? She acknowledged that, yes, they are. I did check that well. More specifically and with regard to her testimony, where did she admit that the respondent did not meet one of the qualifications for sexual sadism? I believe it was in the ability to control. Okay. Again, it's been quite some time. I think I wrote this brief about two years ago. So to be able to tell you exactly where it was, I can find it for you quite easily. I just can't off the top of my head if it's not right there. Are there any other questions? Thank you. Thank you. We'll take the matter into consideration and issue an order in due course.